**In the Matter of WEST ELECTRONICS INC.**

**Appeal of UNITED STATES of America, by the UNITED STATES AIR FORCE.**

**No. 87-5782.**

United States Court of Appeals, Third Circuit.

Argued May 5, 1988.

Decided July 19, 1988.

---

Dorothy Donnelly, Asst. U.S. Atty., Trenton, N.J., Dwight G. Rabuse (argued), Appellate Staff, Civil Div., U.S. Dept. of Justice, Washington, D.C., for appellant.

Kathryn Ferguson (argued), Michael Zindler, Markowitz and Zindler, Lawrenceville, N.J., for appellee West Electronics, Inc.

Before HIGGINBOTHAM,
STAPLETON and GREENBERG,
Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

This matter before the court on appeal from an order of the district court entered September 8, 1987 in a bankruptcy case presents the question of whether the automatic stay provisions of 11 U.S.C. § 362 should be lifted so that the government may terminate a contract entered into with a defense contractor before it sought relief under Chapter 11 of the Bankruptcy Code. The facts germane to the disposition of this appeal are not in dispute and thus our review is of legal precepts and is plenary. *United States v. Adams,* 759 F.2d 1099, 1106 (3d Cir.1985), *cert. denied,* 474 U.S. 906, 971, 106 S.Ct. 275, 336, 88 L.Ed.2d 236, 321 (1985). For the reasons stated below, we hold that the automatic stay should have been lifted so that the contract could be terminated.

I

In 1986 the United States entered into a contract with West Electronics, Inc., under which West was to supply a substantial number of AIM–9 missile launcher power supply units to the Air Force. While West expected this contract to be very profitable, it contends that its ability to perform was impaired by the government's failure to make inspectors available. Nevertheless, West did from time to time receive progress payments under the contract.

In October 1986 West suffered a computer malfunction which destroyed its accounting records, a misfortune which it does not attribute to the government. On November 14, 1986 the government suspended progress payments on the contract pending a review of West's financial status. At that time West had not made its first deliveries under the contract, though it asserts that in late November its first delivery of 60 units passed final inspection. West indicates that the suspension of the progress payments compelled it to deliver some of the power units to another customer willing to pay cash immediately.

The government's review revealed what it considered to be serious irregularities in West's accounting procedures. Overall the contracting officer concluded that because of West's delinquency in delivering the power supply units, the failure of its accounting systems, its delinquency in paying costs attributable to the contract and the excess of unliquidated progress payments to work in progress, the contract should be suspended.

On December 9, 1986 the government served an administrative notice on West requiring it to show cause why the contract should not be terminated. West responded on December 19, 1986 by explaining the impact of the limited availability of government inspectors. On December 18, 1986 the Internal Revenue Service seized West's assets to satisfy a lien of $779,449.40.

On December 19, 1986 West filed a petition for relief under Chapter 11 of the Bankruptcy Code and became a debtor in possession. At that time it obtained an order from the bankruptcy court temporarily restraining the Internal Revenue Service from seizing or removing property from its premises. At a subsequent hearing a consent order was entered which permitted West to regain possession of its premises. Of course, the automatic stay provisions of 11 U.S.C. § 362 were triggered when the petition was filed.

On January 9, 1987 West moved in the bankruptcy court for an order compelling the government to make progress payments on the contract. On February 5, 1987 the government filed a cross-motion seeking an order permitting it to terminate the contract either by the court lifting the automatic stay or in some other appropri-

ate manner. In addition, the government sought an order permitting it to take absolute possession of the parts and work in progress identifiable to the contract.

The bankruptcy judge denied both motions as premature. The judge concluded that he should not compel progress payments until West had first applied for the payments in accordance with the terms of the contract. The judge also indicated that West had the capacity to cure the default and should be given the opportunity to establish it could perform. The judge further ruled that there were no exigent circumstances arising from national defense considerations requiring lifting of the stay. An order reflecting this decision was entered April 9, 1987. The government appealed to the district court. The district judge in a memorandum opinion dated July 20, 1987 affirmed the bankruptcy judge's order. He reasoned that the contract, while executory, could be assumed by West and that because West represented that it had the capacity and intention to cure the default, the bankruptcy court had not erred. On September 8, 1987 the district judge entered an order reflecting this decision. The government has appealed from that order.

## II

As happens often in bankruptcy cases, we are preliminarily presented with a significant jurisdictional question. Under 28 U.S.C. § 158(a) the district courts have jurisdiction to hear appeals from final judgments, orders and decrees and, with leave of court, interlocutory orders and decrees of bankruptcy judges. The courts of appeal have jurisdiction over appeals from final decisions, judgments, orders, and decrees of district judges under 28 U.S.C. § 158(d). Here the government appealed from the bankruptcy judge's order to the district court without leave and the district judge apparently ruled on the case without making any statement as to the finality of the order he was reviewing. Thus, it is obvious that the parties and the district judge treated the bankruptcy order as final.

It is therefore not surprising that on the appeal to us neither party originally questioned our jurisdiction. Nevertheless the possibly tentative nature of the bankruptcy judge's order which denied the government's motion as premature and the conceivably interlocutory character of an order denying relief from a stay raised jurisdictional problems which we cannot overlook. *See In re White Beauty View, Inc.*, 841 F.2d 524 (3d Cir.1988).

The general approach to finality in bankruptcy matters was set forth in *In re Meyertech Corp.*, 831 F.2d 410, 414 (3d Cir. 1987), in which we indicated that:

> In the context of bankruptcy cases, the definition of a final order is less than crystalline. Analysis of finality in these proceedings differs from litigation in an ordinary civil matter. In bankruptcy matters we have consistently considered finality in a more pragmatic and less technical sense than in other matters and the concept, for purposes of appellate jurisdiction, should be viewed functionally. *Matter of Marin Oil, Inc.*, 689 F.2d 445 (3d Cir.1982), *In re Amatex*, 755 F.2d 1034 (3d Cir.1985).

> In *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98 (3d Cir.1981), we enunciated a finding of finality in bankruptcy matters when 'nothing remains for the district court to do.' *Also, Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975).

There have been a substantial number of cases dealing with the finality of orders granting or denying motions to lift stays. In *In re Comer*, 716 F.2d 168 (3d Cir.1983), we held that an order lifting a stay blocking foreclosure of a debtor's property was final because litigation on the question was completed and the property was subject to foreclosure in a state court. Thus the particular matter in controversy was ended. *Id.* at 172. We indicated, however, that it was conceivable that an order denying relief from the automatic stay might be interlocutory. *Id.* at 174 n. 11. In *In re American Mariner Industries, Inc.*, 734 F.2d 426, 429, (9th Cir.1984), the court broadly

held that an order denying relief from the automatic stay is final. *See also In re Kemble,* 776 F.2d 802, 805 (9th Cir.1985). In *In re Leimer,* 724 F.2d 744 (8th Cir. 1984), the court held that an appeal from a bankruptcy court to a district court was from a final order when the order denied a creditor relief from the automatic stay and in so doing conclusively established that the creditor was not the owner of property which it claimed adversely to the debtor's estate. The court pointed out that from the perspective of the creditor there was nothing further for the bankruptcy court to do. *Id.* at 745.

■ From our study of the cases we are satisfied that in some instances an order denying relief from the automatic stay may not be final and thus may not be appealable as of right to the district court. Accordingly, if the order is affirmed on interlocutory appeal, a subsequent appeal to the court of appeals will not then be permitted under 28 U.S.C. § 158(d). Further, we recognize that the bankruptcy court denied the government's application to lift the stay without prejudice, thus suggesting that its order was not final.

Nevertheless on the unusual facts here we are convinced that the pragmatic approach of *Meyertech* requires that we hold that the bankruptcy judge's order was final and that we thus have jurisdiction. The government's asserted bases for relief are that the Nonassignment Act, 41 U.S.C. § 15, bars West as a debtor in possession from assuming the contract without its consent and that as a matter of contract and administrative regulation the government has the right to terminate the contract for its convenience. *See* 48 C.F.R. § 52.249–1, *et seq.;* 48 C.F.R. § 217.7104(a); 48 C.F.R. § 252.217–7120. If the government is correct West should not be permitted to cure its default even if it is capable of doing so. Thus, the consequence of the bankruptcy court's decision was to reject the government's legal positions as the passage of time would not have made them more tenable.

By filing the petition under Chapter 11 West became a debtor in possession and this change in its status either did or did not entitle the government to relief by reason of 41 U.S.C. § 15. Further, the circumstances which the government believed justified terminating the contract for convenience existed when the government filed its motion to lift the stay. Thus, this is not a case in which an application for relief from the stay was denied without prejudice because the record was incomplete, discovery was ongoing or the court required further research on the issue before it. The government was denied relief because in the bankruptcy court's view it was not entitled to it when it filed its motion. In these circumstances we regard the bankruptcy court as having rejected the government's legal positions. Accordingly, we hold that the district court had jurisdiction in this matter as an appeal from a final order under 28 U.S.C. § 158(a) and we have jurisdiction under 28 U.S.C. § 158(d).

### III

■ We hold that the bankruptcy and district court should have lifted the stay and allowed the government to terminate the contract. In this regard we will assume without deciding that the government was barred by 11 U.S.C. § 362(a) from terminating the contract without obtaining an order pursuant to 11 U.S.C. § 362(d). *See* 11 U.S.C. § 541(a)(1); *In re Computer Communications, Inc.,* 824 F.2d 725, 728–31 (9th Cir.1987); *In re Minoco Group of Companies, Ltd.,* 799 F.2d 517 (9th Cir. 1986). Further, we acknowledge in general that under 11 U.S.C. § 365 West as a debtor in possession could assume an executory contract with court approval. But 11 U.S. C. § 365(c)(1) provides that:

(c) The trustee [which includes the debtor in possession [1]] may not assume ... any executory contract ... if ... (1)(A) applicable law excuses a party, other than the debtor, to such contract ... from accepting performance from ... an entity other than the debtor or the debtor

---

1. *See* 11 U.S.C. § 1107; *In re Pioneer Ford Sales,* *Inc.,* 729 F.2d 27, 28 (1st Cir.1984).

in possession ... and (B) such party does not consent to such assumption....

Thus, if non-bankruptcy law provides that the government would have to consent to an assignment of the West contract to a third party, *i.e.*, someone "other than the debtor or the debtor in possession," then West, as the debtor in possession, cannot assume that contract. This provision limiting assumption of contracts is applicable to any contract subject to a legal prohibition against assignment. *See In re Pioneer Ford Sales, Inc.*, 729 F.2d 27 (1st Cir.1984); *In re Braniff Airways, Inc.*, 700 F.2d 935, 943 (5th Cir.1983).

Section 15 of Title 41 of the United States Code is a law requiring the government's consent to the assignment. It provides in relevant part:

No [government] contract ... or any interest therein, shall be transferred by the party to whom such contract ... is given to any other party, and any such transfer shall cause the annulment of the contract ... transferred, so far as the United States are concerned.

As this court noted in *Thompson v. Comm'r of Internal Revenue*, 205 F.2d 73 (3d Cir.1953):

It has been held that the statute was meant to secure to the government the personal attention and services of the contractor; to render him liable to punishment for fraud or neglect of duty; and to prevent parties from acquiring mere speculative interests.... [*Id.* at 76].

We conclude that assignment of a contract calling for the production of military equipment is precisely what Congress intended to prevent when it prohibited assignments in 41 U.S.C. § 15. Thus, West could not force the government to accept the "personal attention and services" of a third party without its consent. It therefore necessarily follows that under 11 U.S.

C. § 365(c)(1) West, as a debtor in possession, cannot assume this contract.

West argues that 41 U.S.C. § 15 should not be construed to foreclose an assignment of a contract from a debtor to a debtor in possession since they are such closely related entities. West's argument misses the point, however, for 11 U.S.C. § 365(c)(1) creates a hypothetical test—*i.e.*, under the applicable law, could the government refuse performance from "an entity *other* than the debtor or the debtor in possession." [Emphasis added]. Thus, the relevant inquiry is not whether 41 U.S.C. § 15 would preclude an assignment from West as a debtor to West as a debtor in possession, but whether it would foreclose an assignment by West to another defense contractor.

The literal meaning of the words chosen by Congress clearly requires the analysis and conclusion we have just articulated and we are confident that it is what Congress intended. We think that by including the words "or the debtor in possession" in 11 U.S.C. § 365(c)(1) Congress anticipated an argument like the one here made and wanted that section to reflect its judgment that in the context of the assumption and assignment of executory contracts, a solvent contractor and an insolvent debtor in possession going through bankruptcy are materially distinct entities.[2] While the relevant case law is very sparse, it supports our understanding of the interplay between 11 U.S.C. § 365(c)(1) and 41 U.S.C. § 15. *See In re Adana Mortgage Bankers, Inc.*, 12 B.R. 977 (Bankr.N.D.Ga.1980); *see also In re Pennsylvania Peer Review Organization, Inc.*, 50 B.R. 640 (Bankr.M.D.Pa. 1985).

The bankruptcy court was, therefore, confronted with a situation in which the debtor in possession was not entitled to assume the contract without the government's consent and the government was unwilling to give that consent. In that situation, the debtor in possession did not

2. 11 U.S.C. § 365(c)(1) was amended by Congress and given its current wording in 1986. *See* Pub.L. 99–554, § 283, 100 Stat. 3088, 3117 (1986). While the section previously was arguably somewhat ambiguous on the point decided herein, we are persuaded that the 1986 amendment merely clarified Congress' original intent and that, in any event, there can be no doubt about the meaning of the section in the present form.

have a legally cognizable interest in the contract and it was an abuse of discretion for the court to decline to lift the stay. In view of our conclusion we need not address the government's contention that it has the right as a matter of contract and administrative regulation to terminate the contract for its convenience.

## IV

We will reverse the judgment of the district court and will remand with instructions to lift the stay imposed pursuant to 11 U.S.C. § 362 as it relates to the government and this contract.

A. LEON HIGGINBOTHAM, Jr., Circuit Judge, concurring in part and dissenting in part.

I join in all parts of Judge Greenberg's thoughtful opinion except as to Part III because I do not believe that a "solvent contractor and an insolvent debtor in possession going through bankruptcy," at 83, are *different* entities for the purposes of the Non–Assignment Clause. The interpretation of the *Adana* court notwithstanding, I think that that provision really meant to avoid having the U.S. government contractually bound to a wholly separate entity that received an assignment from the actual contracting party. I do not believe that when it enacted Section 15 of Title 41, Congress considered the issue of whether a debtor in possession should be viewed as a party different than the debtor.

The government may well have the right to terminate the contract in issue on other grounds, but I am not convinced that 41 U.S.C. § 15 is the appropriate vehicle for the severance of West Electronics' rights under the contract.