# United States Court of Appeals
## For the First Circuit

No. 13-9003

IN RE: ATLAS IT EXPORT CORP.,

Debtor.

PINPOINT IT SERVICES, LLC,

Appellant,

v.

NOEMI LANDRAU RIVERA, CHAPTER 7 TRUSTEE OF
ATLAS IT EXPORT CORP.,

Appellee.

APPEAL FROM THE BANKRUPTCY APPELLATE PANEL
FOR THE FIRST CIRCUIT

Before

Thompson, Lipez, and Kayatta,
<u>Circuit Judges</u>.

<u>Rafael Pérez-Bachs</u>, with whom <u>McConnell Valdés LLC</u> was on brief, for appellant.
<u>Rafael A. González Valiente</u>, with whom <u>Latimer, Biaggi, Rachid & Godreau, LLP</u> was on brief, for appellee.

August 4, 2014

**THOMPSON, <u>Circuit Judge</u>.**

## Overview

This is a bankruptcy case, though the parties go at it like a couple of bare-knuckle brawlers, hurling a barrage of arguments (and trash talk!) at each other at every turn.  We need not jump too deeply into the fray, however, because we lack jurisdiction over the appeal.  We will explain our holding — which makes new law for this circuit — shortly.  First, some background.

## The Combatants

In one corner, we have Pinpoint IT Services, LLC.  Pinpoint is a Virginia company with a principal place of business in Virginia.  In the other corner, we have Noemi Landrau Rivera, the Chapter 7 bankruptcy trustee for Atlas IT Export Corp.  Atlas was a Puerto Rico company with a principal place of business in Puerto Rico.

## Dueling Federal-Court Lawsuits

During late 2010 and early 2011, Pinpoint and Atlas filed dueling federal-court actions based on a 2009 contract between them.  Here is the CliffNotes version of what happened.  Atlas sent Pinpoint a letter requesting that it preserve certain evidence in anticipation of future litigation.  Pinpoint then threw what it hoped would be a knockout blow, suing Atlas in the Eastern District of Virginia (the "Virginia action") on the theory that Atlas — and not Pinpoint — had breached the contract between them.  After some

procedural dustups not relevant here, Atlas moved to change venue to the District of Puerto Rico. But before the judge could rule, Atlas sued Pinpoint in the District of Puerto Rico (the "Puerto Rico action"). Pinpoint filed its answer and counterclaim in the Puerto Rico action, the latter of which simply said that Pinpoint "incorporates by reference" its complaint in the Virginia action. A few weeks later, the judge in the Virginia action denied Atlas's change-of-venue motion, emphasizing (among other things) that a plaintiff's choice of forum is entitled to "substantial" deference, that Pinpoint picked a forum where most of the events giving rise to the Virginia action occurred, and that the balance of convenience did not favor the District of Puerto Rico. Atlas filed its answer and counterclaim in the Virginia action. And Pinpoint asked the judge in the Virginia action to enjoin the Puerto Rico action from continuing.

### Squaring Off in the Bankruptcy Court

About two months after answering and counterclaiming Pinpoint in the Virginia action, Atlas filed for bankruptcy under Chapter 7 of the Bankruptcy Code. What typically happens in a Chapter 7 bankruptcy is that the debtor gives up non-exempt assets and in exchange gets relief from certain debts — thus scoring a "fresh start" of sorts. Marrama v. Citizens Bank of Mass., 549 U.S. 365, 367 (2007). Anyway, Pinpoint filed a proof of claim in the bankruptcy case, claiming Atlas owed it $75,000. And Landrau

Rivera became the trustee in the case, called into service by the United States Trustee's office.

Atlas's filing automatically stayed the Virginia and Puerto Rico actions, naturally. See 11 U.S.C. § 362(a). The judges in both actions entered orders recognizing that reality. But Atlas and the trustee (which is how we will refer to Landrau Rivera from now on) asked the bankruptcy court to modify the stay so the Puerto Rico action could go forward. Pinpoint then renewed its request that the judge in the Virginia action enjoin the Puerto Rico action, noting that the judge in the Virginia action did not rule on its original injunction request before the automatic stay. But that judge denied that motion. Acting on Atlas and the trustee's request for stay relief, the bankruptcy court heard from the trustee that the stay modification should cover not only Atlas's continued prosecution of its complaint in the Puerto Rico action but also Pinpoint's prosecution of its counterclaim. The bankruptcy court asked Pinpoint's counsel how modifying the stay like this would prejudice his client. His answer was that the Puerto Rico action was "duplicative" of the Virginia action. Unpersuaded by Pinpoint's protests, the court modified the stay as Atlas and the trustee had requested, allowing the Puerto Rico

action (both Atlas's claims and Pinpoint's counterclaims) "to proceed to judgment."[1]

Apparently feeling like it had been sucker punched, Pinpoint asked the bankruptcy court to modify the stay so the Virginia action could go forward too. The gist of Pinpoint's argument was that the stay kept the judge in the Virginia action from applying the "first-filed" rule. What that rule basically says is that if two district courts have jurisdiction over the same controversy, then the court with the "first-filed" action should typically get first dibs on deciding the case. See Codex Corp. v. Milgo Elec. Corp., 553 F.2d 735, 737 (1st Cir. 1977) (noting that,

---

[1] Pinpoint later appealed this decision to the Bankruptcy Appellate Panel ("BAP," for short). The BAP asked Pinpoint's counsel at oral argument how this edict adversely affected his client, and he responded that that decision meant Pinpoint could only litigate the Puerto Rico action, an action — the argument continued — that must give way to the first-filed Virginia action. See Pinpoint IT Servs., LLC v. Atlas IT Export, LLC (In re Atlas IT Export, LLC), 491 B.R. 192, 195 (B.A.P. 1st Cir. 2013). Ultimately, the BAP reasoned like so: Concluding that an automatic stay has zero effect on a debtor's ability to sue others, the BAP said the bankruptcy court's ruling "had no impact whatsoever on [the trustee's] power to litigate Atlas' claims against Pinpoint." Id. at 195. "Thus," the BAP wrote, "to the extent the order on appeal ostensibly freed her to do so, it was a non-event." Id. And the BAP found the ruling aggrieved Pinpoint not one bit, stressing that Pinpoint could still ask the Puerto Rico district court to "transfer" the Puerto Rico action to Virginia or "stay[]" the Puerto Rico action in favor of the Virginia action. Id. at 195-96. So the BAP dismissed Pinpoint's appeal for lack of standing. Id. at 196. And we summarily affirmed in an unpublished judgment. See Pinpoint IT Servs., LLC v. Atlas IT Export, Corp. (In re Atlas IT Export, Corp.), No. 13-9005 (1st Cir. Aug. 6, 2013) (concluding — "[f]or substantially the same reasons" given by the BAP — that Pinpoint had no standing to prosecute that appeal).

like most, this rule is not without exceptions, and adding that "[w]hile the first-filed rule may ordinarily be a prudent one, it is so only because it is sometimes more important that there be a rule than that the rule be particularly sound").[2] And Pinpoint insisted that because the bankruptcy court had modified the automatic stay to let the "second-filed action" (the Puerto Rico action) proceed "first, it would turn the first-filed rule on its head not to allow the first-filed action" (the Virginia action) to proceed too.[3] But, the bankruptcy court stressed, Pinpoint had not shown how it might be harmed if the parties had to spar over the first-filed rule before the judge in the non-stayed Puerto Rico action. And because the first-filed issue can be "actively litigated in the district court of Puerto Rico," the bankruptcy court expressly avoided taking a position on that issue. Also, the court said, lifting the stay in the Virginia action would adversely affect the bankruptcy estate. That is so, to quote the court, "because as proffered by the trustee, the estate does not have counsel in Virginia and sufficient funds on hand to hire counsel to defend itself against Pinpoint's claim in Virginia or to prosecute

---

[2] See also Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987) (noting that "[w]here identical actions are proceeding concurrently in two federal courts, entailing duplicative litigation and a waste of judicial resources, the first filed action is generally preferred in a choice-of-venue decision").

[3] We removed all unnecessary bolding from this quote. And we will do that for all quotes appearing in the rest of this opinion.

-6-

its counterclaim in the Virginia litigation."[4]   And, the court found, granting Pinpoint's pined-for stay relief would disserve efficiency concerns, because a "similar" case — i.e., the Puerto Rico action — is "already going forward."   So having found that Pinpoint had not shown "cause" to lift the automatic stay, the court denied the motion.   See 11 U.S.C. § 362(d)(1) (letting bankruptcy courts lift automatic stays for "cause").

An unhappy Pinpoint appealed to the BAP.   But the BAP eventually concluded that the order did not amount to a "final" decision from which Pinpoint could appeal as a matter of right. The challenged order, the BAP reasoned, only decided that Pinpoint could not "presently proceed in the United States District Court for the Eastern District of Virginia, based upon principles related

---

[4] "Does the trustee have assets to hire counsel in Virginia?" the bankruptcy court asked the trustee's lawyer at the hearing on Pinpoint's stay-relief motion.   "[W]e only have five thousand dollars," the trustee's attorney answered, which

> is not enough to even start to hire somebody to litigate that.   The retainer would probably be more than the five thousand dollars we have available.
> We do have counsel in Puerto Rico who's willing to prosecute the case on a percentage basis, which . . . does not put a burden on the estate, the creditors or Pinpoint.   But, in Virginia, that is not the case.
> So, it would . . . probably . . . put an end to the litigation, . . . kill, in other words, the [estate's] major asset[].

The trustee herself later proffered that if the stay was lifted as requested then "the estate would be harmed because it does not have any funds right now to hire" a Virginia lawyer to litigate the Virginia action.   Pinpoint's lawyer did not object to either proffer.   "[W]ould you like to sit the trustee down [i.e., would you like her to take the stand]?" the court asked Pinpoint's attorney — to which he replied, "No, no."

-7-

to judicial economy, as well as the best interests of the estate and creditors." But — to quote the BAP again — the order did not bar Pinpoint from trying "to prove its case, or from arguing the 'first-to-file rule,' in the United States District Court for the District of Puerto Rico." Consequently, the BAP dismissed the appeal for lack of jurisdiction. Not willing to throw in the towel, Pinpoint appealed that decision to us (which is what this opinion deals with).

Pinpoint then asked the judge in the Virginia action to enjoin the Puerto Rico action, arguing that the trustee's litigation tactics in Puerto Rico's federal district court flew in the face of the first-filed rule. Atlas counterpunched by filing an adversary complaint in the bankruptcy case, charging Pinpoint with violating the automatic stay and asking for sanctions plus injunctive relief against its foe. Unimpressed, Pinpoint moved to dismiss the adversary proceeding: letting the trustee proceed with the Puerto Rico action offended the "first filed rule" and thus entitled Pinpoint to file "defensive pleadings" like the injunction request without running afoul of the automatic stay — or so Pinpoint argued. But given Pinpoint's appeal here from the denial of its stay-relief request, the judges in both actions opted to suspend all proceedings in their courts and defer ruling on the motions pending our decision.

## Our Jurisdiction

### The Issue

What is before us is Pinpoint's appeal from the BAP's judgment dismissing Pinpoint's challenge to the bankruptcy court's no-stay-relief order. True to form, the parties bloody each other with arguments, this time tussling over our jurisdiction to hear Pinpoint's appeal (we have it, Pinpoint insists; not so, says Atlas) as well as the merits of that appeal (the decisions of both the bankruptcy court and the BAP violated the first-filed rule, Pinpoint exclaims; hardly, argues Atlas). We begin — and ultimately end — with the jurisdiction issue.

Pinpoint bases our jurisdiction on 28 U.S.C. § 158(d)(1), which so far as relevant here lets us review appeals from "final decisions, judgments, orders, and decrees" by the BAP.[5] The question then is whether the BAP's dismissal of Pinpoint's BAP appeal for lack of finality amounts to a "final" order. But the answer depends on whether the bankruptcy court's order denying Pinpoint stay relief constitutes a "final" order. We think that it does not, though we readily admit that this is no easy legal issue.

---

[5] See generally Bullard v. Hyde Park Savings Bank (In re Bullard), No. 13-9009, 2014 WL 1910868, at *2 (1st Cir. May 14, 2014) (discussing in exquisite detail the general paths for appealing bankruptcy decisions).

First Principles

Normally we treat a federal-court action as a "'single judicial unit'" from which only one appeal can be made.  In re Saco Local Dev. Corp., 711 F.2d 441, 443 (1st Cir. 1983) (Breyer, J.). But because a bankruptcy case is quite often a conglomeration of separate cases that lives on for many years, we take a flexible approach to finality here, giving that requirement "a 'practical' rather than a 'technical' construction."  In re Parque Forestal, Inc., 949 F.2d 504, 508 (1st Cir. 1991) (quoting Gillespie v. U.S. Steel Corp., 379 U.S. 148, 152 (1964), overruled in part on other grounds by Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1 (2000)) ("Parque," from here on out); see also Bullard, 2014 WL 1910868, at *2.  For example, we have stamped an order "final" where "there is no possibility [at the time of appeal] that [the] order will be changed or become moot, or that 'piecemeal appeals' will waste the time of this court or the parties" — indicators of finality, one and all.  See Parque, 949 F.2d at 508.  What this means is that in the world of bankruptcy, "final" does not just describe the last order entered at the case's end — you know, the one "that ultimately disposes of all the debtor's assets on the basis (perhaps) of the results of many individual proceedings and controversies taking place over many years within the context of the overall bankruptcy case."  Tringali v. Hathaway Mach. Co., 796 F.2d 553, 558 (1st Cir. 1986) (Breyer,

-10-

J.).  No, "final" includes an order that decides all — repeat, all — the issues "of a 'discrete dispute within a larger case.'"  Id. (quoting In re Am. Colonial Broad. Corp., 758 F.2d 794, 801 (1st Cir. 1985) (henceforth, "Colonial")); see also Bullard, 2014 WL 1910868, at *3 n.5.

Extra-Circuit Caselaw<br>On Orders Denying Stay Relief

Now consider orders dealing with stay-relief requests. Orders granting stay relief are orders "disposing of a discrete dispute" and so are final and appealable as of right — on this point every circuit (including this one) that has considered the question agrees.[6]  They are final, we have said, echoing the Third Circuit, because "'[n]othing more need be done by the district court or the bankruptcy court on the matter of the automatic stay.'"[7]  As for orders denying stay relief — which is the focus of our attention today — the vast majority of the circuits that have reviewed the matter consider all such edicts final and appealable too, regardless of circumstances.[8]  Judge Kayatta's dissent

_____

[6]  See Tringali, 796 F.2d at 558; 1 Collier on Bankruptcy ¶ 5.09, at 5-51 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

[7]  Tringali, 796 F.2d at 558 (quoting In re Comer, 716 F.2d 168, 172 (3d Cir. 1983)).

[8]  See, e.g., Eddleman v. U.S. Dep't of Labor, 923 F.2d 782, 784-85 (10th Cir. 1991), overruled in part on other grounds by Temex Energy, Inc. v. Underwood, Wilson, Berry, Stein & Johnson, 968 F.2d 1003, 1005 n.3 (10th Cir. 1992); In re Lieb, 915 F.2d 180, 185 n.3 (5th Cir. 1990); Sonnax Indus., Inc. v. Tri Component

-11-

emphasizes this point.  We do not diminish the importance of the other circuits supporting the blanket rule (which is what we call it).  But we see nothing inherently troubling about contributing to a circuit split.  The numbers favoring a rule do not necessarily mean that the rule is the best one.  Indeed, there is an observable phenomenon in our courts of appeal and elsewhere — sometimes called "herding" or "cascading" — where decisionmakers who first encounter a particular issue (i.e., the first court to consider a question) are more likely to rely on the record presented to them and their own reasoning, while later courts are increasingly more likely to simply go along with the developing group consensus.  Andrew F. Daughety & Jennifer F. Reinganum, Stampede to Judgment: Persuasive Influence and Herding Behavior by Courts, 1 Am. L. & Econ. Rev. 158 (1999).  We think it is always incumbent on us to decide afresh any issue of first impression in our circuit.

Lots of courts reached that blanket rule primarily by way of analogy, saying things like:  a "denial of relief from an automatic stay in bankruptcy is equivalent to a permanent

---

Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1284-85 (2d Cir. 1990); Barclays-Am./Bus. Credit, Inc. v. Radio WBHP, Inc. (In re Dixie Broad., Inc.), 871 F.2d 1023, 1026 (11th Cir. 1989); Crocker Nat'l Bank v. Am. Mariner Indus. (In re Am. Mariner Indus.), 734 F.2d 426, 429 (9th Cir. 1984), overruled in part on other grounds by United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd., 480 U.S. 365 (1988); Grundy Nat'l Bank v. Tandem Mining Corp., 754 F.2d 1436, 1439 (4th Cir. 1985); Aetna Life Ins. Co. v. Leimer (In re Leimer), 724 F.2d 744, 745-46 (8th Cir. 1984).

injunction and is thus a final order."[9]  Even there, an important factor was whether the complained-about order fully decided the issue that sparked the stay-relief request in the first place.[10]

But not every circuit that has confronted this question has signed on to that blanket rule.[11]  We have in mind the Third Circuit, whose approach is of a decidedly less categorical stripe, reflecting a fact-specific, case-by-case style of analysis.[12]  Take West, for example.  The government there moved for relief from the automatic stay so that it could try to cancel its contract with the debtor.[13]  The bankruptcy court denied the motion, the district

---

[9] Sonnax Indus., Inc., 907 F.2d at 1285; accord Eddleman, 923 F.2d at 784-85; Leimer, 724 F.2d at 746.

[10] See Quigley Co. v. Law Offices of Peter G. Angelos (In re Quigley Co.), 676 F.3d 45, 51 (2d Cir. 2012) (citing Sonnax and explaining that an order denying stay relief is "final" if "the bankruptcy court has not indicated that it contemplates further proceedings on the question of relief from the stay"); Eddleman, 923 F.2d at 784 (noting the argument that the appealed-from order "settle[d] the question of whether the automatic stay applie[d]" to the government's administrative action against the debtors); Leimer, 724 F.2d at 744-45 (concluding that the relevant order was "final" because the bankruptcy court had definitively decided the issue that drove the stay-relief request — i.e., whether the creditor was the sole owner of certain land, entitling it to sell the property in a state-court proceeding, free from the automatic stay).

[11] See In re West Elecs. Inc., 852 F.2d 79, 82 (3d Cir. 1988) ("West," to save some keystrokes).

[12] See id.

[13] Id. at 80-81.

court affirmed, and the government appealed.[14] Discussing ordinary signs of finality, the Third Circuit noted that "finality in bankruptcy matters" occurs "when nothing remains for the [lower] court to do."[15] Canvassing the authorities elsewhere "broadly" holding "that an order denying relief from the automatic stay is final," the Third Circuit stressed that those edicts had "conclusively" decided the contested issue so that from the creditor's perspective the bankruptcy court had "nothing further" to do.[16] The Third Circuit then contrasted the challenged order from one that denied stay relief "without prejudice because the record was incomplete, discovery was ongoing or the court required further research on the issue before it" — each a sign of nonfinality.[17] Ultimately, the Third Circuit concluded that the appealed-from edict was indeed final because the bankruptcy court had considered and rejected the government's legal arguments about whether it was entitled to cancel the contract: "the consequence of the bankruptcy court's decision," the court wrote, "was to reject the government's legal positions as the passage of time

---

[14] Id. at 81.

[15] Id. (internal quotations omitted) (quoting In re Meyertech Corp., 831 F.2d 410, 414 (3d Cir. 1987), in turn quoting Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101 (3d Cir. 1981)).

[16] Id. at 81-82 (discussing Leimer).

[17] See id. at 82.

would not have made them more tenable."[18]  Note too that the Third Circuit did not get bogged down over whether the government's right-to-cancel argument was spot-on; it simply eyed the bankruptcy court's order to see if the lower court had decided that discrete issue.

## Our View

Pinpoint thinks the blanket rule should be the law in this circuit.  Atlas, not so much.  Until today we have found it unnecessary to take a position on the issue.  See United States v. Fleet Bank of Mass. (In re Calore Express Co.), 288 F.3d 22, 34 (1st Cir. 2002) ("Calore," for the rest of the opinion) (declining to "reach the question whether a bankruptcy court's refusal to lift the automatic stay may ever lack finality").  But the opening bell has sounded for us to address this issue and so we go the distance.

Calore actually helps point the way.  There we highlighted the caselaw underlying the blanket rule, see id. (explaining that "[n]umerous circuits have held that a district court's affirmance or reversal of the bankruptcy court's decision whether to lift the automatic stay is final, often without qualifying that holding") — the very caselaw Pinpoint pins its jurisdictional hopes on.  But we chose not to embrace the blanket rule right then and there.  Instead we found finality existed there because (a) the bankruptcy court's order "decide[d] the relevant

---

[18] Id.

-15-

dispute" that prompted the stay-relief request — <u>i.e.</u>, whether the court should lift the stay so the government could set off claims of two federal agencies (including the IRS) against the debtor's contract claims against the government — and because (b) the appellant would have no recourse if we did not consider it "final." <u>See</u> <u>id.</u> at 34-35.

What we did in <u>Calore</u> jibes with our past decisions (spotlighted above), which (a) require us to keep in mind the uniqueness of bankruptcy litigation, with its multiple layers of proceedings within proceedings and its many moving parts; and which (b) command us to scout for finality indicators, like whether the disputed order conclusively decided a discrete, fully-developed issue — an order that, at the time of the appeal, will not be changed or be mooted and is not reviewable elsewhere. <u>See</u>, <u>e.g.</u>, <u>Parque</u>, 949 F.2d at 508; <u>Tringali</u>, 796 F.2d at 558. And respect for the path marked by our prior cases — <u>Tringali</u>, <u>Parque</u>, and <u>Calore</u>, for example — requires us to reject the blanket rule that denials of stay relief are <u>always</u> final, no ifs, ands, or buts. As we see things, that rule clashes with our caselaw because it turns a cold shoulder to bankruptcy's unusual nature and makes an order's appealability turn on the label affixed to it ("order denying stay relief," and the like) rather than on finality telltales.

As for what appears to be one of the blanket rule's animating ideas — that an automatic stay is like an injunction and

-16-

so is final and appealable — here is our take: Yes, an automatic stay enjoins parties from acting. See Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997). But it is different from an injunction. That is because the operation of the stay is the default position. See id. Congress in its wisdom has already decided that the parties' interests are best protected by automatically staying litigation against the bankrupt. See id. In other words, Congress has already decided the balance of equities — with that balance being one of the four elements for a preliminary injunction. See Mercado-Salinas v. Bart Enters. Int'l, Ltd., 671 F.3d 12, 19 (1st Cir. 2011) (listing likelihood of success, risk of irreparable harm, balance of equities, and the public interest as the four time-honored preliminary-injunction factors). Consequently, the automatic stay's continued operation — thanks to the denial of stay relief — should not be treated for finality purposes like an injunction entered at the case's start after a judge has sifted the familiar injunction factors. See generally Sunshine Dev., Inc. v. FDIC, 33 F.3d 106, 113 (1st Cir. 1994) (commenting that "[b]ecause the automatic stay is exactly what the name implies — 'automatic' — it operates without the necessity for judicial intervention").

As for the other much-touted benefits of this (and frankly any other) blanket rule — uniformity and judicial economy — we are not convinced that these ends are best served by stamping

-17-

all denials of automatic stay relief immediately appealable. Indeed, it is a narrow view of judicial economy that attributes time savings to a blanket jurisdictional rule here. Sure, it would make the jurisdictional-review section of our opinions a one-sentence pronouncement that requires little, if any, analysis. But it is far from certain that a particular bankruptcy case — or bankruptcy cases in the aggregate — would be more efficient with a blanket rule of appealability. Bankruptcy courts deny relief from the automatic stay based on circumstances that are often rapidly changing and on records that are not fully developed. Letting parties appeal as of right in such situations inevitably will result in appeals that are superseded by events in related proceedings. A more nuanced approach avoids this unnecessary judging. Also, without a blanket rule, parties will not reflexively appeal from the denial of a request for relief from the automatic stay. Instead, they will have to think through the finality issue themselves given the guidance provided here. That self-policing by the parties will contribute to overall judicial economy in bankruptcy cases.

The short of this long analysis is that we reject Pinpoint's preferred blanket-rule approach. Like the Third Circuit, we think it possible that in some cases an order denying stay relief may lack finality. Everything depends on the circumstances, naturally: taking into account the particular

order's reasoning and effect, an inquiring court must determine — consistent with our past opinions on finality — whether that edict definitively decided a discrete, fully-developed issue that is not reviewable somewhere else.  See Tringali, 796 F.2d at 558.  If yes, the order is final; if no, it is not.  Lawyers and judges please take note, however:  the inquiry turns not on whether the order conclusively decided the merits of the underlying litigation (a mistake made in some BAP decisions[19]), but rather (as we just said) on whether the order conclusively decided the fully-developed, unreviewable-elsewhere issue that triggered the stay-relief fight below.

### Application

When measured against the correct standard, the order denying stay relief here is not final (though it certainly is a close call).  Here is why.

What prompted Pinpoint's stay-relief plea was a venue concern — that the first-filed rule requires the lifting of the stay so that the judge in the first-filed Virginia action can referee the contract dispute.  That is the relevant discrete issue, not (to be clear) which party should win the contract suit.  But in concluding that Pinpoint had not shown cause for stay relief, the bankruptcy court specifically avoided deciding the first-filed

---

[19] See Caterpillar Fin. Servs. Corp. v. Braunstein (In re Henriquez), 261 B.R. 67, 71 n.6 (B.A.P. 1st Cir. 2001).

issue — remember, the court relied instead on its finding that Pinpoint's stay-relief bid clashed head-on with other considerations, including important efficiency interests. Critical to the court's reasoning was the fact that Pinpoint can litigate the first-filed issue in the Puerto Rico action, which the court had un-stayed so that the parties could duke it out on the contract claims.

The judge in the Puerto Rico action has not yet had a chance to weigh in on the venue-related, first-filed issue. But once he does, he could conclude that the first-filed rule applies and that he must stay his own proceedings or consolidate them with the Virginia action (thereby shipping the whole case to Virginia). And if that happens, then Pinpoint can ask the bankruptcy court for stay relief based on that turn of events. If, however, the judge in the Puerto Rico action decides that the first-filed rule does not apply and that venue is proper there, Pinpoint can again ask the bankruptcy court to lift the stay against the Virginia action, on the theory that it has no other way to stop the parallel action in Puerto Rico. Either way, the bankruptcy court will get to decide the stay-relief question again, this time on a better-developed record. And the court may very well lift the stay, depending on how the first-filed question is decided.[20]

_____

[20] This is very much like the type of situation the Third Circuit had in mind in West. Here, "the record was incomplete" because the bankruptcy court did not have the benefit of a district

-20-

Or, to look at this another way:  Basically what the bankruptcy court did was specify the venue (the Puerto Rico district court) that gets first crack at deciding the first-filed issue — a decision that will reveal which federal court (Puerto Rico's or Virginia's) gets to preside over the contract case.  So, as the situation now stands, Pinpoint can litigate everything — the first-filed issue and the contract imbroglio.  It just has no guarantee that it will litigate in its preferred venue.  Cf. generally Codex Corp. v. Milgo Elec. Corp., 553 F.2d 735, 737 (1st Cir. 1977) (holding that orders granting or denying venue transfer are customarily not appealable as of right).  Ultimately this concatenation of circumstances — an order that does not decide the first-filed issue (the very issue that prompted Pinpoint's stay-relief effort), but instead leaves Pinpoint free to go toe-to-toe with Atlas on that issue in another forum, with a possibility that Pinpoint will get what it wants in the end — undercuts Pinpoint's finality claim.[21]

_____

court's decision on the first-filed issue.  See 852 F.2d at 82.

[21]  Quoting Sonnax, Judge Kayatta argues that our "jurisdictional ruling will necessarily require a full briefing of all issues and consume as much judicial resources as an appeal." 907 F.2d at 1285.  Not so.  We, for example, have not said who's right or who's wrong on the first-filed issue.  All we have done is looked to see whether the bankruptcy court considered and decided that discrete issue.  But "by sending the case to Puerto Rico for a resolution of the first-filed issue," Judge Kayatta adds, "the bankruptcy court did indeed decide that dispute finally against Pinpoint," because, he suggests, the court basically blocked the judge in the Virginia action from deciding the competing-venue

On the ropes, Pinpoint tries to pound away on several fronts. But not a single blow lands.

For openers Pinpoint pounces on a passage in Calore saying that we have "jurisdiction to review an order of the bankruptcy court refusing to lift the automatic stay when the order resolves all issues between the parties." 288 F.3d at 28. According to Pinpoint, that excerpt must mean that an order denying stay relief is final if "there are no unresolved issues between the parties pending in the bankruptcy court and only in the bankruptcy

issue. Again, though, the effect of the bankruptcy court's combined rulings is limited to identifying the federal venue where the parties can raise certain venue-related arguments. And as we just noted in a case parenthetical above, venue-transfer orders are typically not appealable as of right. See, e.g., Codex Corp., 553 F.3d at 737. Judge Kayatta says the better analogy to what took place here is to a decision by one federal court (the bankruptcy court) to enjoin a litigant (Pinpoint) from pursuing a parallel action (the Virginia action) in another federal court (Virginia federal court). A decision like that — when entered by a federal district court — is appealable, he writes. With respect, we believe his analogy is inapt because it fails to account for the fact that it is the statutorily-imposed automatic stay — not the order of a dueling court — that actually temporarily enjoins Pinpoint's Virginia efforts during the pendency of the bankruptcy.
Judge Kayatta also describes this case as one where "one federal court (the bankruptcy court) has, by refusing to lift the automatic stay, left in place an injunction barring Pinpoint from continuing to pursue a lawsuit in another federal court, which has not surrendered venue, but has instead determined that it is the proper venue for the action." And he reminds everyone that before Atlas's game-changing bankruptcy filing, "[t]he Virginia court . . . , in a reported decision, . . . denied Atlas's motion to transfer the Virginia action to Puerto Rico." But as we have taken some pains in this opinion to explain, no court — neither the Virginia or Puerto Rico federal courts nor the bankruptcy court — has yet decided what the proper venue for the action is under the first-filed rule. Ultimately, then, Judge Kayatta's line of analysis does not change our thinking.

-22-

court."  It matters not — the thesis runs — that the order leaves an issue like the first-filed rule resolvable in a non-bankruptcy-court forum.  And to Pinpoint's way of thinking, since the order denying stay relief "left zero unresolved issues between the parties pending resolution by the bankruptcy court," that order is "'final' and appealable as a matter of right."

Unfortunately for Pinpoint, a large problem looms.  Even assuming (for argument's sake only) that its reading of Calore is correct (and we intimate no view on the subject), there is an adversary action in the bankruptcy court that could resolve the first-filed issue in Pinpoint's favor — recall, Pinpoint put that issue front and center there in moving to dismiss Atlas's adversary complaint, telling the bankruptcy court things like the first-filed rule demands that "if [Atlas's] claim against Pinpoint is to proceed, it must proceed in the Virginia [federal] court."  And that fact knocks the legs out from under Pinpoint's leadoff argument.

Wait a second, exclaims Pinpoint.  Atlas initiated adversary proceedings after the BAP deemed the order denying stay relief non-final and dismissed Pinpoint's appeal for lack of jurisdiction.  So "unless the BAP was reading tea leaves" when it took that step, Pinpoint adds, "there was no pending bankruptcy court adversary proceedings" to legitimize the BAP's dismissal. How this chronology affects our jurisdiction Pinpoint does not say.

But even continuing to assume (again, without deciding) that the presence of an adversary proceeding matters for jurisdictional purposes (and we whisper no hint either way) the record before us does include an unresolved adversary proceeding in place. And that fact kiboshes this line of argument.

In something of a parting shot, Pinpoint says that it is up to the judge in the Virginia action to decide the first-filed issue, not the judge in the Puerto Rico action. To lend plausibility to its point, Pinpoint leans heavily on Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d 599 (5th Cir. 1999). But even assuming that Cadle squares with our circuit's law (and we say nothing about whether it does or does not), that opinion holds that the "second-filed court" can decide if the issues in the two cases might substantially overlap. Id. at 605 (quoting Mann Mfg. Inc. v. Hortex, Inc., 439 F.2d 403, 407 (5th Cir. 1971)). A yes answer, Cadle says, means that the "second-filed court" must then transfer the case to the "first-filed court" to decide which case should continue. Id. at 606. The import of all this is clear: even under Pinpoint's caselaw, the judge in the Puerto Rico action can participate in any slugfest over the first-filed rule — which means Pinpoint's final argument sails wide of the mark.

### Last Words

Our work complete, we dismiss Pinpoint's appeal for lack of jurisdiction. Costs to Atlas. So ordered.


**-Dissenting Opinion Follows-**

**KAYATTA, Circuit Judge, dissenting.** I agree with my respected colleagues that Pinpoint's appeal provides no basis upon which to reverse the ruling of the bankruptcy court refusing to lift the automatic stay. I nevertheless dissent from the judgment of dismissal, because this court should decide this case by ruling on the merits, rather than by creating a circuit split in order to find the challenged order of the bankruptcy court non-appealable.

Bankruptcy law is an area in which uniformity has particular value. See Daniel A. Austin, Bankruptcy and the Myth of "Uniform Laws", 42 Seton Hall L. Rev. 1081, 1135-39 (2012); Erwin Chemerinsky, Decision-Makers: In Defense of Courts, 71 Am. Bankr. L.J. 114-15 (1997) (pointing to "expertise and uniformity" as the "two major advantages" of specialized bankruptcy courts). And as my colleagues acknowledge, seven of the eight other circuits that have ruled on the appealability of orders denying relief from the automatic stay have held that such orders are categorically appealable.[22] Even the Third Circuit, which was until now the only

---

[22] See Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.3d 1280, 1284-85 (2d Cir. 1990); Grundy Nat'l Bank v. Tandem Mining Corp., 754 F.2d 1436, 1439 (4th Cir. 1985); In re Lieb, 915 F.2d 180, 185 n.3 (5th Cir. 1990); Aetna Life Ins. Co. v. Leimer (In re Leimer), 724 F.2d 744, 745-46 (8th Cir. 1984); Crocker Nat'l Bank v. Am. Mariner Indus. (In re Am. Mariner Indus.), 734 F.2d 426, 429 (9th Cir. 1984), overruled in part on other grounds by United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd., 480 U.S. 365 (1988); Eddleman v. Dep't of Labor, 923 F.2d 782, 784-85 (10th Cir. 1991), overruled in part on other grounds by Temex Energy, Inc. v. Underwood, 968 F.2d 1003, 1005 n.3 (10th Cir. 1992); In re Dixie Broad., 871 F.2d 1023, 1028 (11th Cir. 1989).

federal court of appeals to so much as feint in the direction of a rule admitting of an exception, has itself never encountered an order that fell within the exception it hypothesized. Indeed, in the dictum in which it postulated such an exception, the court sketched that exception's contours so narrowly as to ensnare only tentative orders--those that deny relief "without prejudice because the record [is] incomplete, discovery [is] ongoing[,] or the court require[s] further research on the issue before it." See In re West Elecs. Inc., 852 F.2d 79, 82 (3d Cir. 1988).[23]

The majority is certainly correct that we should not join our sister circuits simply to form a herd. At the same time, though, the majority cannot dispute the notion that, at the margins (and this case is certainly there, see Majority Op., at 19), uniformity has a positive value, especially in setting federal bankruptcy law. See, e.g., U.S. Const., art. I, § 8, cl. 4 (granting Congress the power to adopt "uniform Laws on the subject of Bankruptcies throughout the United States"). And while the

---

[23] My colleagues suggest that the bankruptcy court's order was based on an incomplete record, "because the bankruptcy court did not have the benefit of a district court's decision on the first-filed issue." See Majority Op., at 20-21 n.20. But that is simply no rejoinder to Pinpoint's argument that it is entitled to litigate precisely that issue (i.e., the first-filed issue) in the Virginia court. My colleagues do not explain, because they cannot explain, what relevance the Puerto Rico district court's decision on the first-filed issue will have on the purely legal question of whether that court is entitled to decide that issue in the first place. For that reason, this case, much like every case the Third Circuit has ever confronted, falls outside the West Electronics exception.

majority speculates that its "more nuanced" approach preserves resources and inhibits unnecessary appeals as compared to the uniform approach of seven other circuits, my knowledgeable colleagues point to no appeal in any circuit -- ever -- that would have been precluded or rendered less difficult by adoption of the majority's rule. In this important respect, the majority's approach values abstraction borne of theory rather than pragmatism borne of experience.

My colleagues are also correct, of course, that relief from the automatic stay differs from a typical injunction because Congress has effectively determined that, in bankruptcy, an injunction is the default position. And I need not quibble with the conclusion that this determination represents an implicit judgment that the equities in bankruptcy are more likely to weigh in favor of an injunction, at least initially. In this manner, Congress has placed on the party opposing the automatic stay the burden of seeking and justifying a change in the status quo. So far, so good. Where the majority then errs conceptually is in finding the reallocation of the burden of changing the status quo to justify a heightened degree of stinginess in allowing an appeal from a ruling preventing such a change. This cannot be correct. History, custom, and practice make the default position in ordinary, non-bankruptcy civil cases "no injunction," thereby placing the burden of seeking and justifying an injunction on the

-27-

party desiring to change the tentative status quo. Yet it is clear that appeals by parties who are unsuccessful in securing a status-quo-altering injunction are routinely allowed. In short, the question of which party has the burden of changing the default status quo has no logical bearing on the question of appealability. In each instance, the lower court has exercised its equitable jurisdiction in a manner that immediately resolves a putative claim of irreparable harm. And in each instance, an appeal should be allowed to review that decision.

Even under the majority's new test, the justification for refusing to hear this appeal is weak. In concluding otherwise, the majority swims even against the current in our own circuit. As the majority correctly concedes, In re Calore, 288 F.3d 22, 34 (1st Cir. 2002), did not decide whether a refusal to lift the automatic stay is or is not always appealable. Rather, it did only what it needed to do: it decided that the refusal to lift the automatic stay in that particular case was appealable. And in making that finding, the court relied simply on the fact that the bankruptcy court "clearly did decide the relevant dispute between the parties." Id. In the race-to-the-courthouse case now before us, the relevant dispute concerns not which court hears the merits of the case, but rather, which court will decide that question. And by sending the case to Puerto Rico for a resolution of the first-filed issue, the bankruptcy court did indeed decide that dispute

finally against Pinpoint.[24]  That relevant dispute may be rarified, and any harm speculative.  But those are reasons to deny the appeal on the merits, not to create an idiosyncratic exception to the norm that such orders are appealable.

Twenty-four years ago, Judge Winter observed that "the purpose of the finality rule, judicial economy," would not be served by an ad hoc, case sensitive approach to determining jurisdiction over orders denying relief from the stay.  In re Sonnax, 907 F.3d at 1285.  The reasoning the majority provides today proves that warning prescient, as the court finds itself unable to decline jurisdiction without resting explicitly on an on-the-merits rejection of Pinpoint's argument that, as an incident of its status as first-filer, it is entitled to litigate not only the merits of its case, but also its venue challenges, in Virginia. See Majority Op, at 22 ("[E]ven under Pinpoint's caselaw, the judge in the Puerto Rico action can participate in any slugfest over the

_____

[24]  The majority suggests that if the judge in the Puerto Rico action determines to proceed to the merits, "Pinpoint can again ask the bankruptcy court to lift the stay against the Virginia action, on the theory that it has no other way to stop the parallel action in Puerto Rico." Majority Op., at 19.  This is correct, but hardly relevant.  For if the court in Puerto Rico accepts venue and proceeds with the action, any effort to persuade the bankruptcy court to allow the district court in Virginia to decide whether it wants to belatedly join in a race to judgment hardly restores Pinpoint to the position in which it found itself before the stay took effect.  The majority's suggestion that it will be sufficient to close the barn door only later on, long after the horse has left, illustrates perfectly why the rule permitting appeals is the correct one.

first-filed rule, which means Pinpoint's final argument sails wide of the mark."), 19 ("So, as the situation now stands, Pinpoint can litigate everything, the first-filed issue and the contract imbroglio. It just has no guaranty that it will litigate in its preferred venue."); compare Sonnax, 907 F.3d at 1285 (warning that "[t]he jurisdictional ruling will necessarily require a full briefing of all issues and consume as much judicial resources as an appeal").[25] As I understand the majority's rule, if Pinpoint were correct in claiming an entitlement, notwithstanding any countervailing consideration, to litigate venue in Virginia, we would take jurisdiction. Indeed, under the majority's rule, the only cases in which there will be no jurisdiction are precisely those cases, such as this one, in which the merits decision is straightforward. Because the majority's jurisdictional rule requires us to analyze the merits even while it purports to shield us from having to do so, the rule (which cannot be said to flow from either a constitutional or a statutory requirement) fails even to further the single aim--judicial economy--that could provide it a justification.

---

[25] My colleagues object to Judge Winter's observations, responding that they, "for example, have not said who's right or who's wrong on the first-filed issue." See Majority Op., at 21 n.21. But this deserves no special credit: Were my colleagues to properly conclude, on the merits, that the bankruptcy court acted permissibly when it allowed the issue to be decided in the Puerto Rico litigation, it would be strange indeed if they then decided the issue themselves.

The majority objects to this characterization, suggesting that instead of deciding the merits, it need only characterize the "effect" of the bankruptcy court's ruling. But parsing out the degree and extent of an injunction's effects on the parties will often be not only an issue, but the key issue in considering the merits of an appeal from an order denying relief from the automatic stay. Moreover, even in cases such as this one, in which the merits could be easily disposed of, divining the "effect of the bankruptcy court's combined rulings," see Majority Op., at 22-23 n.21, may be no easy task.

Here, for example, my colleagues compare the order of the bankruptcy court to an order transferring venue, which is not appealable even if entered by a district court. See id. At first blush, this seems a reasonable point. Actually, though, an order transferring venue is an order by one federal court surrendering venue to another in a given action. What has happened in this case, by contrast, is that one federal court (the bankruptcy court) has, by refusing to lift the automatic stay, left in place an injunction barring Pinpoint from continuing to pursue a lawsuit in another federal court, which has not surrendered venue, but has instead determined that it is the proper venue for the action.[26]

---

[26] The Virginia court has, in a reported decision, already denied Atlas's motion to transfer the Virginia action to Puerto Rico. See Pinpoint IT Servs. v. Atlas IT Export Corp., 812 F. Supp. 2d 710 (E.D. Va. 2011).

-31-

Such orders, when entered by the district courts of the United States, are in fact routinely appealable. <u>Small</u> v. <u>Wageman</u>, 291 F.2d 734, 734 (1st Cir. 1961) ("Since the appeal is from an order of the District Court granting an injunction, this court clearly has appellate jurisdiction under Title 28 U.S.C. § 1292(a)(1)."). In short, by mischaracterizing the effect of the order entered by the bankruptcy court, the majority has insulated from interlocutory review an injunction that would plainly be reviewable were it entered by an Article III court, thus turning bankruptcy's more "flexible approach to finality," <u>see</u> Majority Op., at 10, on its head.

All told, the majority's approach transforms what was until today a non-issue into fodder for briefing and analysis in the nascent sub-sub-specialty of Appellate Jurisdiction over Bankruptcy Court Orders Denying Relief From Stay. Unless that area draws only counsel who, unlike me, are able to confidently and accurately anticipate how the fine nuances of the majority's exception will apply in future cases, we will receive more briefing on losing jurisdictional objections, and no less briefing on the merits. The majority barters away simplicity in exchange for promised efficiency gains, but I fear that the deal will leave us with neither.

I would therefore proceed more directly and simply to the merits of the appeal. The bankruptcy court's order reasonably

balances competing claims of harm, protects the assets of the bankruptcy estate against waste resulting from a race to the courthouse, and deprives Pinpoint of only an advantage in posture and preference rather than an opportunity to be heard.  For the straightforward reason that the order below thus bears no sign of any abuse of discretion, I would reject Pinpoint's appeal on the merits.  See generally In re Myers, 491 F.3d 120, 128 (3d Cir. 2007) (observing that the Bankruptcy Court is accorded "wide latitude" to "balance the equities when granting relief from the automatic stay").  Because the majority instead chooses to create a new and entirely unnecessary precursor battleground that will add expense and delay while likely never altering the practical outcome of even a single case, I respectfully dissent.